**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**PATRICK C.,**

                     **Plaintiff,**

**v.**

                                                      **17-CV-246**

**COMMISSIONER OF SOCIAL SECURITY,**

                     **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all proceedings in this case, including entry of final judgment. Dkt. No. 36. Patrick C. ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for benefits. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 32, 35. For the following reasons, Plaintiff's motion (Dkt. No. 32) is denied, and the Commissioner's motion (Dkt. No. 35) is granted.

## BACKGROUND

On February 7, 2014, Plaintiff applied for Social Security Disability (Title II) alleging that he became disabled on November 16, 2013, by degenerative disc disease, hip replacement, tremors, psoriasis, high blood pressure, and high cholesterol. Tr. at 140,

157.[1]  Plaintiff's claim was denied at the initial level, and he requested review.  After a hearing, an Administrative Law Judge found that Plaintiff was not disabled in a decision dated May 16, 2016.  Tr. at 33.  Plaintiff, who was represented by counsel, testified as did a vocational expert.  Tr. at 33-60.  The Appeals Council denied Plaintiff's request for review on January 19, 2017, and Plaintiff filed a case in federal court.  Tr. at 1, 569.  Magistrate Judge Holly B. Fitzsimmons remanded that case back to the Social Security Administration.  Tr. at 569.

Upon remand, Administrative Law Judge Mary Mattimore conducted hearings on November 4, 2019, and July 13, 2020.  Tr. at 472, 489.  Plaintiff was represented by counsel and a vocational and medical expert testified at length.  Tr. at 472, 489.  On July 29, 2020, the ALJ issued a decision in which she found that Plaintiff was not under a disability as defined by the Act from November 16, 2013, through June 2, 2016.  Tr. at 455-66.  Plaintiff and the Commissioner jointly moved to reopen the prior case on September 2, 2020.  Dkt. No. 24.

## LEGAL STANDARD

**Disability Determination**

A person making a claim for Social Security benefits bears the ultimate burden of proving disability throughout the period for which benefits are sought.  *See* 20 C.F.R. § 416.912(a); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982).  The claimant is disabled only if he shows that he is unable to engage in any substantial gainful activity

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 7 (pp. 1-451) and Docket No. 26 (pp. 452-804)

due to any medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909; see *Barnhart v. Walton*, 535 U.S. 212, 216-22 (2002).

A disabling physical or mental impairment is an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). Congress places the burden upon the claimant to establish disability by "furnish[ing] such medical and other evidence of the existence [of a disability] as the Commissioner . . . may require." 42 U.S.C. § 1382c(a)(3)(H)(i). The function of deciding whether a person is under a disability within the meaning of the Act belongs to the Commissioner. 20 C.F.R. § 416.927(e)(1); *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997).

In keeping with this function, the Commissioner has established a five-step sequential evaluation for adjudicating disability claims, which is set forth at 20 C.F.R. § 416.920. The claimant has the burden at the first four steps. The Commissioner has the burden at the fifth step of demonstrating that the claimant can perform other work existing in significant numbers in the national economy; but the burden of proving disability is always on the claimant. *See* 20 C.F.R. § 416.920; *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (stating that "[t]he claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought") (citation omitted).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. See *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).

Substantial evidence is "more than a mere scintilla." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. See *Perez v. Chater*, 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex*

rel. *N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process. *Lynch v. Astrue*, No. 07-CV-249-JTC, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period of November 16, 2013, through June 2, 2016.[2] Tr. at 458. The ALJ concluded at step two that Plaintiff suffered from the severe impairments of post complete left-hip replacement, obesity, and chronic low back pain secondary to lumbar degenerative disc disease with bulges and spinal stenosis. Tr. at 458. At step three, she concluded that Plaintiff did not have an impairment or combination of impairments which met or equaled the Listings giving special consideration to Listing 1.02 (Major Dysfunction of a Joint), Listing 1.04 (Disorders of the Spine), and Social Security Ruling 19-2p (Evaluating Cases Involving Obesity). Tr. at 459.

The ALJ found that Plaintiff retained the RFC to perform a range of light work as defined by 20 C.F.R. § 404.1567(b), as he could push/pull and lift 20 pounds occasionally and 10 pounds frequently; could carry 10 pounds occasionally and 5 pounds frequently; could sit four hours in an eight-hour day but only for 45 minutes at a time, and

---

[2] The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2022. Tr. at 458.

required the freedom to stand and or walk for 1-2 minutes while on task and at his workstation; could stand for 2 hours in an eight-hour workday, but only for 30 minutes at a time, and that he required the freedom to sit for 2-3 minutes while on task and at his workstation; could walk for two hours out of an eight-hour day, but only for 20 minutes at a time, and that he required the freedom to sit for 2-3 minutes while on task and at his workstation; must avoid uneven surfaces; could never climb ladders, or scaffolds, and never crawl or squat; and should avoid exposure to vibration (i.e., machines), hazardous machines/equipment, unprotected heights, and cold temperature extremes.  Tr. at 459-64.

The ALJ concluded that claimant could not perform any of his past relevant work.  Tr. at 464.  Relying on the VE's testimony, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy, including the jobs of survey worker and companion.  Tr. at 465.  Accordingly, the ALJ determined that Plaintiff had not been under a disability from November 16, 2013, through June 2, 2016.  Tr. at 466.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 32, 35.  Plaintiff argues that the ALJ violated the Treating Physician Rule by declining to give controlling weight to the opinions of Dr. Thomas Scanlon and Dr. Brian Herbst without giving good reasons.  Dkt. No. 32-1, pp. 11-18.  For the following reasons, this Court disagrees and finds that further remand is not warranted.

**Opinion Evidence**

Dr. Scanlon completed a Physical RFC Questionnaire on February 14, 2014. Tr. at 395-99.  Therein, he reported that he had treated Plaintiff for chronic pain for the past 9 years approximately 4 times a year.  Tr. at 395.  Dr. Scanlon opined that Plaintiff could sit for about 2 hours and stand/walk for less than 2 hours in an 8-hour workday; could occasionally lift less than 10 pounds, rarely lift 10-20 pounds, and never lift 50 pounds; could occasionally stoop (bend), twist, or climb stairs, rarely crouch/squat, but could never climb ladders.  Tr. at 396-98.  Dr. Scanlon felt Plaintiff would be absent from work three days per month because of his impairment or treatment.  Tr. at 398.

Dr. Herbst at Buffalo Medical Group completed a supportive Lumbar Spine RFC Questionnaire on April 15, 2016.  Tr. at 446-50.  He began treating Plaintiff in 2015, seeing him every 4-6 months.  Tr. at 446.  Dr. Herbst opined that Plaintiff is not capable of sustaining full-time work for 8 hours a day and 5 days per week.  Tr. at 449.  He limited Plaintiff to sitting for less than 2 hours and standing/walking for less than 2 hours in an 8-hour workday.  Tr. at 448.  He stated that Plaintiff can never lift, even items that weigh less than 10 pounds; should rarely stoop (bend), crouch/squat, twist, or climb stairs; and should never climb ladders; and could only reach for 10%, handle for 20%, and finger for 0% of an 8-hour workday.  Tr. at 449.  Dr. Herbst cited to the following clinical findings in support of his opinion:  Plaintiff's MRI imaging showing orthopedic disc changes, X-ray imaging showing scoliosis angle, a positive SLR test, tenderness of the left paraspinal muscles, muscle spasms on the left part of the spine, and a reduced range of motion.  Tr. at 446-47.

Medical expert Dr. Allan Levine, an orthopedist, testified at the administrative hearing regarding Plaintiff's limitations during the relevant period. Tr. at 498, 502, 517, 802. He identified Plaintiff's impairments as chronic low back pain secondary to lumbar degenerative disc disease from L3 to S1 with compromise of the left neural foramen at L3-4, with L3 nerve root compression, and L4 spinal stenosis; status post left total hip replacement secondary to left hip fracture; and obesity. Tr. at 523-26. He opined that Plaintiff's limitations from the hip replacement were mild, and that Plaintiff's impairments did not meet or equal any Listings. Tr. at 525-27. Regarding Plaintiff's physical abilities, he testified that Plaintiff could occasionally lift or push/pull 20 pounds, and frequently lift 10 pounds; could only occasionally carry 10 pounds and frequently carry 5 pounds; could sit 4 out of 8 hours, but no more than 45 minutes at a time; would need the option to stand or walk for 1 to 2 minutes after sitting; could stand 2 of 8 hours but could not stand more than 30 minutes at a time; would need the option to sit for 2 to 3 minutes after standing for 30 minutes; could walk 2 of 8 hours, but not more than 20 minutes at a time; would need the option to sit for 2 to 3 minutes after walking; could not walk on uneven surfaces, squat, use heavy or dangerous machinery, be around unprotected heights, or be around extreme cold. Tr. at 530-31.

**The Treating Physician Rule**

The "treating physician" rule requires ALJ's to give "deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). Specifically, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so

long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)). "Medically acceptable clinical and laboratory diagnostic techniques include consideration of a patient's report of complaints, or history, as an essential diagnostic tool." *Id.* (quotation marks and brackets omitted).

An ALJ may decline to give "controlling" weight to the opinion of a claimant's treating physician, but must "consider several factors in determining how much weight [the physician's opinion] should receive," *Id.* at 129, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Ecklund v. Comm'r*, 349 F. Supp. 3d 235, 242 (W.D.N.Y. 2018) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

If an ALJ decides to not give "controlling" weight to a claimant's treating physician, "the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (quotation marks omitted). The ALJ need not "explicitly walk through" the factors identified above, "so long as the Court can conclude that the ALJ applied the substance of the treating physician rule." *Eckland*, 349 F. Supp. at 242 (quotation marks omitted). Nonetheless, "[f]ailure to provide . . . good reasons for not crediting the opinion of a claimant's treating physician is a ground for

9

remand." *Burgess*, 537 F.3d at 129-30 (quotation marks omitted).  Because the "'good reasons' rule exists to ensure that each denied claimant receives fair process, an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record." *McCarthy v. Colvin*, 66 F. Supp. 3d 315, 323 (W.D.N.Y. 2014) (quotation marks and citations omitted).  Of course, the ALJ's reasons for discounting a treating physician's opinion must also be "supported by [specific] evidence in the case record." *Id.* at 323 (quotation marks omitted).

In Plaintiff's case, the ALJ did not outright reject the opinions of the treating sources but rather assigned them "limited weight" (Dr. Herbst) and "some weight" (Dr. Scanlon).  Tr. at 462-63.  In so doing, the ALJ considered numerous factors including the length and frequency of Plaintiff's treating relationship with each doctor, the doctors' respective specialties, and whether the opinion was supported and consistent with the record.  Tr. at 462 (noting that Dr. Scanlon had treated Plaintiff 9 years 4 times per year); Tr. at 463 (stating Dr. Herbst had "only been treating the claimant since 2015 [at the time of his April 2016 opinion], seeing the claimant every 4 to 6 months).

The ALJ noted that Dr. Scanlon treated Plaintiff generally for pain, and Dr. Herbst treated Plaintiff for lumbago and scoliosis, rather than disc disease and stenosis, which were his allegedly disabling conditions.  *See* Tr. at 462-63; *see also* Tr. 395, 423, 446, 533.  The ALJ acknowledged also that Dr. Scanlon was an internist and Dr. Herbst, a

10

family practitioner, while Dr. Levine was a board-certified orthopedic surgeon, and appropriately afforded "great weight" to Dr. Levine's opinion. Tr. at 462-64, 503; 20 C.F.R. § 404.1527(c)(5) (generally the opinion of a specialist about issues related to his specialty are entitled to more weight than the opinion of a non-specialist).

The ALJ also found that Drs. Scanlon's and Herbst's opinions were not well supported. Tr. at 462-63. Dr. Scanlon provided minimal treatment records with no clear lumbar-related physical examination findings. Tr. 407-11, 462. Dr. Herbst's examination findings revealed "chronic tissue texture change to [bilateral] paraspinal muscles," but normal range of motion with no mention of spinal or paraspinal tenderness or spasm; and no record that straight leg testing was performed. Tr. at 425, 429, 436, 438-39, 463. Moreover, Dr. Herbst regularly found no focal motor or sensory deficits, and unremarkable reflexes. Tr. at 425, 429, 436, 439. Thus, it was appropriate for the ALJ to afford these opinions less weight. 20 C.F.R. § 404.1527(c)(3) (a well-supported medical source opinion is entitled to more weight than a medical source opinion that is not well supported).

This Court also finds no error with the ALJ giving great weight to the opinion of Dr. Levine, given its consistency with the record as a whole. Tr. at 461-64; 20 C.F.R. § 404.1527(c)(4) (the more consistent an opinion is with the record as a whole, the more weight it deserves). As a general rule, "a consultative examiner's opinion may be accorded greater weight than a treating source's opinion where the ALJ finds it more consistent with the medical evidence." *Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018); *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (holding

11

that "the opinions of non-examining sources [can] override treating source's opinions provided they are supported by evidence in the record"); *accord Suttles v. Colvin*, 654 F. App'x 44, 46 (2d Cir. 2016) (summary order) (holding that it was not erroneous for the ALJ to give great weight to consultative examiner's opinion because it was consistent with record evidence).

At the November 4, 2019 administrative hearing, Dr. Levine testified regarding Plaintiff's medical record as a whole, including the largely normal examination findings. Tr. at 461-62, 464, 522-35. Dr. Levine noted that although the April 2016 magnetic resonance imaging (MRI) study showed protruding and bulging discs at L3-4 and L4-5, compromise of the left neural foramen at L3-4, compression of the left L3 nerve root, and severe spinal canal stenosis at L4-5 (Tr. at 441-42, 461, 523-24), exam findings "repeatedly document an absence of neurological deficit." Tr. at 526; *see also* Tr. at 461, 524, 526. Specifically, Dr. Levine noted that the record consistently showed normal motor strength, no sensory deficits, and normal reflexes prior to the relevant period (Tr. at 389), during the relevant period (Tr. at 403, 429, 436, 439), and even after the close of the relevant period. Tr. at 795, 799; Tr. at 526-27, 461. Dr. Levine also noted that Plaintiff's exams consistently revealed normal gait (Tr. at 402, 798), negative straight leg testing (Tr. at 403, 795, 799), intact dexterity (Tr. at 403, 799), and full grip strength (Tr. at 403, 799), as well as full range of motion during the relevant period. Tr. at 403, 799; Tr. at 461, 527. Based on this record, Dr. Levine concluded that Plaintiff would be limited by pain, not by neurological issues such as loss of strength or sensation, and he provided a functional assessment that accommodated Plaintiff's pain. Tr. at 530-31.

The other record evidence does not support the conclusion that Plaintiff was more restricted than the RFC suggests.  *See* Tr. at 461-64; 20 C.F.R. § 404.1527(c)(4).  For instance, in August 2013, three months prior to the start of the relevant period, Dr. Scanlon provided a much less restrictive functional assessment, which concluded that Plaintiff could not do heavy lifting, move heavy objects, climb ladders, or do stairwell work, but that he would be able to perform the other tasks of a school custodian, including mopping floors; washing walls, ceilings, and windows; dusting; stripping and finishing floors; vacuuming and shampooing carpets; collecting and disposing of trash; fixing toilets and sinks; and replenishing cleaning and bathroom supplies.  Tr. at 409, 462.  Plaintiff's wide range of activities of daily living were more consistent with Dr. Levine's less restrictive opinion.  Tr. at 460-62, 464.  Plaintiff reported daily living activities of performing personal care without limitation, cooking, cleaning, doing laundry, shopping, performing childcare, mowing the lawn with a riding mower, snow blowing with a self-propelled blower, riding a bicycle, driving, going to college, volunteering with the fire department, walking, going out to socialize with friends, and watching television.  Tr. at 166-71, 176, 402, 460-61.

Accordingly, this Court finds that the ALJ articulated sufficiently good reasons for affording Dr. Scanlon's and Dr. Herbst's opinions less than controlling weight.

Plaintiff clearly disagrees with the ALJ's evaluation of the evidence and RFC determination.  However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record, and both may be affirmed as supported by substantial evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012).

That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder *would have to conclude otherwise*." *Brault*, 683 F.3d at 448 (emphasis added).  This case does not present such a situation.  For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 32) is DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 35) is GRANTED.

**SO ORDERED.**

DATED:	Buffalo, New York
	September 28, 2022

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**